UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**18 MISC 182**

------------------------------------------------------------x
:
SECURITIES AND EXCHANGE COMMISSION, :
:
        Applicant,         :     No. 18-mc-     (    )
:
    – against –         :
:
SHAWN CARTER, :
:
        Respondent.     :
:
------------------------------------------------------------x

## SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENA

Thomas A. Bednar *(pending pro hac vice)*
Kevin C. Lombardi *(pending pro hac vice)*
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-6218 (Bednar)
Telephone: (202) 551-8753 (Lombardi)

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Iconix Records Impairment of Rocawear Assets During 2015 | 2 |
| | B. The Commission's Investigation | 3 |
| | C. Efforts to Procure Carter's Testimony and Subpoena to Carter | 4 |
| III. | ARGUMENT | 5 |
| IV. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Cases**

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ................................................................. 7

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977) ....................................................................... 7

*NLRB v. C.C.C. Assocs., Inc.*, 306 F.2d 534 (2d Cir. 1962) .......................................................... 7

*RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997) ...................................................... 6

*SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1021 (D.C. Cir. 1978) ............................................ 7

*SEC v. Finazzo*, 543 F. Supp. 2d 224 (S.D.N.Y. 2008) ................................................................. 7

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 741 (1984) ....................................................................... 6

*United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) ...................... 7

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .................................................................. 6

*United States v. Powell*, 379 U.S. 48 (1964) .................................................................................. 7

**Statutes**

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] ............................................................ 1

Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] ........................................................... 1

Section 20(a) of the Securities Act [15 U.S.C. § 77t(a)] ............................................................ 3

Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)] ........................................................... 3

Section 21(c) of the Exchange Act [15 U.S.C. § 78u(c)] ........................................................... 6

**Regulations**

Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] .................................................................... 1

The Securities and Exchange Commission ("SEC" or the "Commission") respectfully submits this memorandum of law in support of its Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoena (the "Application"). For the reasons set forth below, and in the accompanying Declaration of Danette Edwards ("Edwards Decl.") and the exhibits thereto, the Commission respectfully requests that the Court enter an Order, in the form attached to the Application, directing Respondent Shawn Carter to comply with the investigative subpoena dated February 23, 2018 that the Commission lawfully issued and served upon his counsel (the "Subpoena").

## I. PRELIMINARY STATEMENT

The Commission is conducting an investigation entitled *In the Matter of Iconix Brand Group, Inc.* (Internal File No. HO-12747) (the "Iconix Investigation"). Iconix Brand Group, Inc. ("Iconix") is a publicly-traded company based in New York, New York. As discussed in Iconix's public filings with the SEC, Iconix purchased certain trademarks and other intangible assets from Respondent Carter over ten years ago for approximately $204 million, including assets relating to the Rocawear brand.

For the years ended December 31, 2015 and December 31, 2017, Iconix recorded impairment charges (*i.e.*, reductions in assets and income) to its Rocawear-related assets for approximately $169 million and $34.6 million, respectively. The Iconix Investigation includes inquiry into whether any persons or entities violated the federal securities laws, including the antifraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], in connection with Iconix's reporting of intangible assets, including the Rocawear-related assets.

Respondent Shawn Carter, an important witness in this investigation of possible violations of the federal securities laws, has defied two lawful subpoenas, failing to appear for testimony twice. Moreover, his counsel repeatedly refused to provide alternate dates for Respondent Carter's testimony. In February of 2018, Respondent Carter retained new counsel who, similarly, refused to provide the Commission with any date on which Respondent Carter would testify pursuant to the Commission's lawfully issued subpoenas. The Commission clearly advised Respondent Carter's counsel that it would be forced to seek Court intervention if Carter did not provide a date for his testimony by April 30, 2018. Counsel did not provide the Commission with any proposed dates on April 30, 2018. Accordingly, the Commission is left with no alternative but to apply to this Court for issuance of an order to show cause and an order compelling Respondent Carter to appear for testimony.

## II.    STATEMENT OF FACTS

### A.    Iconix Records Impairment of Rocawear Assets During 2015[1]

Iconix is a Delaware-incorporated, publicly-traded company based in New York, New York. Iconix's common stock trades on the NASDAQ under the symbol, "ICON." More than a decade ago, Iconix purchased from Respondent Carter the intangible assets (trademarks, etc.) associated with the Rocawear apparel brand for approximately $204 million. Subsequently, Iconix publicly reported that Respondent Carter remained involved with the Rocawear brand.

Following the sale, Respondent Carter and Iconix maintained certain publicly-disclosed business partnerships with each other via companies such as Scion LLC ("Scion"), purportedly a vehicle for buying, creating, and developing brands; and Roc Apparel Group LLC ("RAG"), which licensed the Rocawear brand. During the relevant time, Respondent Carter was a joint owner, with

---

[1]    *See generally* Edwards Decl. ¶¶ 4-6.

Iconix, of Scion, RAG, and other joint venture companies (collectively, the "Carter-Iconix joint ventures"). Respondent Carter owned and licensed, through the Carter-Iconix joint ventures, multiple brands that comprise a significant part of the intangible assets at issue in the Iconix investigation.

In March 2016, Iconix filed its annual report on Form 10-K for the fiscal year ended December 31, 2015, and reported an impairment loss stemming from Rocawear. In that report, Iconix wrote down the Rocawear brand by approximately $169 million, a large component of an even larger total impairment figure (approximately $402 million) that the company also disclosed for the first time.[2] Two years later, in March 2018, Iconix filed its Form 10-K for the fiscal year ended December 31, 2017, and recorded another trademark impairment loss of approximately $525.7 million, including a write-down of Rocawear by approximately $34.6 million.

**B.     The Commission's Investigation**

On November 23, 2015, pursuant to Section 20(a) of the Securities Act [15 U.S.C. § 77t(a)] and Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)], the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Iconix Investigation (the "Formal Order"). (Edwards Decl. ¶ 7.) The Commission staff provided a copy of the Formal Order to Carter's counsel. (Edwards Decl. ¶ 7.)

During the course of its investigation, the Commission staff determined that it was necessary to seek the sworn testimony of Respondent Carter regarding, among other things: the value of the Rocawear trademark and his involvement with that brand after the sale to Iconix; the Carter-affiliated companies that did business with Iconix; the multiple transactions involving Respondent

---

[2]     In March 2017, Iconix filed its Form 10-K for the fiscal year ended December 31, 2016. Iconix disclosed in that report another trademark impairment loss of approximately $424.9 million. The company's filing did not publicly disclose how it allocated the impairment loss among its various brands.

Carter, his affiliated companies, and Iconix; Respondent Carter's knowledge and intent with respect to those transactions, and his awareness of the knowledge and intent of other people with respect to those transactions; and multiple emails, meetings, and phone calls related to Iconix in which Respondent Carter was or may have been a participant, according to the evidence developed by the Commission staff thus far. (Edwards Decl. ¶ 9.) In deciding to subpoena Respondent Carter, the Commission staff determined that it was necessary to obtain his testimony on these subjects, and that no other source of evidence would suffice to cover all of these topics. Based on the evidence collected to date and the scope of the Iconix Investigation, the Commission staff estimate that examination of Respondent Carter will take at least a full day of testimony.

### C. Efforts to Procure Respondent Carter's Testimony and Subpoena to Respondent Carter

On November 16, 2017, pursuant to the Formal Order, the SEC staff served a subpoena *ad testificandum* upon Respondent Carter, through counsel, calling for his testimony on January 23, 2018 (the "November 2017 Carter Testimony Subpoena"). (Edwards Decl. ¶ 9.) Through counsel at the time, Respondent Carter requested a scheduling accommodation so his testimony would not conflict with other professional commitments. At that time, Respondent Carter's counsel repeatedly refused to schedule any specific date for the testimony and never provided the Commission with a new date. Respondent Carter then retained his present counsel, who similarly failed to provide a date for his testimony. (Edwards Decl. ¶¶ 12-31.)

On February 6, 2018, Mr. Alex Spiro informed the staff that he was assuming responsibility for Respondent Carter's representation in the Iconix Investigation. (Edwards Decl. ¶ 20.) The staff requested that Mr. Spiro provide dates for Respondent Carter's testimony, which he subsequently refused to do. (Edwards Decl. ¶¶ 21-31.) The staff sent Mr. Spiro a letter dated February 23, 2018, recounting the various efforts made by the staff to secure Respondent Carter's presence and enclosing a second testimonial subpoena returnable March 21, 2018. (Edwards Decl. ¶ 22.) The

4

second subpoena called for Respondent Carter's testimony on March 21, 2018. (Edwards Decl. ¶ 22 and Decl. Exh. 8.) By letter dated March 19, 2018, counsel relayed Respondent Carter's refusal to appear on the scheduled date, and Respondent Carter subsequently failed to appear as directed. (Edwards Decl. ¶ 26 and Decl. Exh. 12.)

On April 18, 2018, litigation counsel for the Commission informed counsel for Respondent Carter that the staff intended to file an action to enforce the subpoena for testimony. (Edwards Decl. ¶ 26 and Decl. Exh. 13). The Commission subsequently advised Respondent Carter's counsel that it would seek Court intervention if Respondent Carter did not provide alternate dates for his testimony by April 30, 2018. (Edwards Decl. ¶ 30 and Decl. Exh. 16). In email correspondence and two phone calls, counsel stated that Respondent Carter would not comply with the Commission's lawfully issued subpoena – indeed, he would not even provide dates when he was available – unless the Commission staff agreed to his demand to limit the testimony to four hours. (Edwards Decl. ¶¶ 26-32 and Decl. Exhs. 14-17). Over the past five months, Respondent Carter has failed to appear in response to two lawfully issued subpoenas, and has failed to provide a single date on which he would appear for testimony – even after the Commission clearly advised Respondent Carter (through counsel) that it would seek this Court's intervention to enforce its subpoena.

### III.   ARGUMENT

For over five months, Respondent Carter has refused to testify in response to two Commission subpoenas lawfully issued pursuant to federal securities laws, and he has not offered a single alternate date for his testimony. At the eleventh hour, after being informed that the Commission would move to enforce its last subpoena, counsel for Respondent Carter has suggested that Respondent Carter would agree to comply with his legal obligations under the subpoena, but only if the Commission staff first agreed to an artificial, "four hour cap" on the Commission's lawful inquiry. Respondent Carter should not be permitted to thwart the Commission's investigation in

this manner. As set forth in more detail below, the Commission satisfies each of the requirements for enforcement of its Subpoena, and Respondent Carter has offered no legitimate reason for non-compliance.[3] The Court should therefore order him to comply.

It is well settled that the Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). Section 21(c) of the Exchange Act [15 U.S.C. § 78u(c)] authorizes the Commission to seek an order from this Court compelling Respondent to comply with its subpoenas.[4] Consequently, "[t]he courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96-97 (2d Cir. 1997) (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995)) (affirming order directing compliance with Commission subpoenas).

So long as the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant," the Court should enforce the Commission's Subpoena. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Thus, to obtain an order enforcing the Subpoena, the Commission need only demonstrate that it meets four requirements: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commission['s] possession, and [4] that the administrative steps required…have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enters.*, 122 F.3d at 96–97; *see also SEC v.*

---

[3] The Commission's application seeks enforcement of the February 23, 2018 Subpoena, which is the most recently served subpoena and which Respondent Carter most recently refused to obey. Because the Commission took further steps to obtain Respondent Carter's testimony after his disobedience of the November 16, 2017 Subpoena – including by serving the second subpoena – the Commission is seeking enforcement of the most recent Subpoena only.

[4] Pursuant to Section 21(c), venue properly lies in the Southern District of New York because this district is one in which Respondent "resides or carries on business." (Edwards Decl. ¶ 4.)

*Arthur Young & Co.*, 584 F.2d 1018, 1021, 1024 (D.C. Cir. 1978) (affirming the enforcement of Commission subpoenas). "An affidavit from a governmental official is sufficient to establish a prima facie showing that these requirements have been met." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1136). Here, the Commission satisfies each of the four *prima facie* requirements for enforcement of the Subpoenas.[5]

**First,** the Commission is conducting the Iconix Investigation for a legitimate purpose, namely, to determine whether there have been any violations of the federal securities laws in connection with Iconix's reported financial results. *See RNR Enters.*, 122 F.3d at 97 (holding that an investigation into potential securities law violations reflects a "legitimate investigatory purpose"); *SEC v. Finazzo*, 543 F. Supp. 2d 224, 227 (S.D.N.Y. 2008); *Arthur Young & Co.*, 584 F.2d at 1024.

**Second,** the Commission seeks testimony relevant to the Iconix Investigation.[6] To satisfy this requirement, the Commission need only show that the information sought is "not plainly incompetent or irrelevant to any lawful purpose." *Arthur Young & Co.*, 584 F.2d at 1029 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters.*, 122 F.3d at

---

[5] Once the Commission makes a *prima facie* showing, Respondent may defeat the enforcement of the Subpoena only by demonstrating that it is "'unreasonable' or was issued in bad faith or for an 'improper purpose,' or that compliance would be 'unnecessarily burdensome.'" *RNR Enters.*, 122 F.3d at 97 (quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973)). Respondent may not prevail on grounds that his conduct was legal or that the investment at issue was not a "security." *See, e.g., Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *NLRB v. C.C.C. Assocs., Inc.*, 306 F.2d 534, 538 (2d Cir. 1962); *FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977) ("If parties under investigation could contest substantive issues in an enforcement proceeding, when the agency lacks the information to establish its case, administrative investigations would be foreclosed or at least substantially delayed.").

[6] Because its investigation is ongoing, the Commission has endeavored to base its application on information about Iconix that is already in the public domain. Upon request, the Commission can provide the Court additional information regarding its investigation for *in camera* review.

97 (quoting *McVane*, 44 F.3d at 1135). Here, Respondent Carter owned and licensed, through the Carter-Iconix joint ventures, multiple brands that comprised a significant part of the intangible assets at issue in the Iconix Investigation. The Commission seeks to inquire about transactions involving the Carter-Iconix joint ventures and Respondent Carter's own knowledge of and involvement in those transactions, subjects which are highly relevant to the Iconix Investigation.

**Third,** the Commission does not already possess the information sought, in that it has not previously taken Respondent Carter's sworn testimony. Without this testimony, the Commission lacks basic information about the business purposes of, and the parties' expectations about, the licensing arrangements at issue. Consequently, the SEC has no adequate alternatives to Respondent Carter's sworn testimony.

**Fourth,** the requisite administrative steps have been followed. Commission staff, acting pursuant to a lawful Formal Order, served two investigative subpoenas on Respondent Carter, through his counsel, who were authorized to accept service on his behalf.

## IV.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court order Respondent to show cause why he should not comply with the Subpoena and, absent such cause, order his compliance.

Respectfully submitted,

*[signature: Kevin C. Lombardi]*

Dated:  May 2, 2018

Kevin C. Lombardi (*pending pro hac vice*)
Tel:  (202) 551-8753
Email:  lombardik@sec.gov
Thomas A. Bednar (*pending pro hac vice*)
Tel:  (202) 551-6218
Email:  bednart@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC  20549
Facsimile:  (202) 772-9282