UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION

                Applicant,

– against –

SHAWN CARTER,

                Respondent

Case No. 18-MISC-182-PGG

# DECLARATION OF ALEX SPIRO

1. My name is Alex Spiro. I am a partner at Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel" or "we"). The facts stated in this declaration are within my personal knowledge.

2. On January 31, 2018, I started representing Shawn Carter in his personal capacity as lead counsel in connection with the Securities and Exchange ("SEC") Investigation, *In the Matter of Iconix Brand Group, Inc., HO-12747*.

3. On February 6, 2018, I held a telephone conference with the SEC to discuss the subpoena issued on November 16, 2017 for Mr. Carter to appear to testify on January 23, 2017. During the course of the conversation, I requested the SEC provide information me as to the nature of information sought so that I could properly advise my client. I explained that appearance for testimony would place an undue burden on Mr. Carter and requested reasonable accommodations to minimize the burden testimony would place on him. I offered several alternative methods by which the SEC could obtain the information requested, including through an attorney proffer, client proffer, telephone interview, written declaration or response to queries provided by the SEC.

4. I reiterated my request to the SEC in writing on February 12, 2018, requesting that they provide reasonable accommodations to minimize the burden on Mr. Carter that would still allow us to provide the SEC the information they needed.

5. The SEC responded on February 23, 2018 with a request for dates on which Mr. Carter would provide testimony and issued a second subpoena for Mr. Carter to appear to testify on March 21, 2018.

1

6. On March 15, 2018, I again requested the SEC inform me as to the nature of the information that they required so that I could properly advise my client. I further explained to the SEC that they had not, in communications with me or prior counsel, provided any basis for why Mr. Carter's live testimony is necessary for the investigation and why it could not be obtained through any of the other formats I and previous counsel had offered.

7. Without responding to my questions, the SEC informed me that I could make a request in writing for the Formal Order in the investigation, and sent me a tolling agreement that they requested Mr. Carter sign. This would run the statute of limitations applicable to any action to December 18, 2018, and again, lacking basis for the tolling agreement, Mr. Carter did not sign.

8. In a letter on March 19, 2018, I again reiterated Mr. Carter's desire to provide information helpful to the investigation, and indicated my concern that the SEC lacked sufficient justification to require Mr. Carter to provide sworn testimony given the many alternatives I had offered.

9. The SEC did not respond to my repeated request for information as to the nature of the testimony sought, which was the minimum necessary to enable me to properly prepare my client in response to the second subpoena issued on February 23, 2018 for testimony on March 21, 2018.

10. On April 20, 2018, I held another telephone conference with the SEC to obtain clarification on the SEC's need for testimony with Mr. Carter. During the telephone conference, the SEC informed me of its intention to file the following week an order to secure Mr. Carter's testimony. The same day, the SEC sent a second tolling agreement and informed me that they intended to seek judicial intervention absent Mr. Carter's signing the tolling agreement.

11. The SEC wrote again on April 27, 2018 to confirm that they would not permit a time limit to the testimony of Mr. Carter, but would agree to two dates, whereby the first meeting could be limited to four hours and all remaining questions put forth on a second agreed date.

12. On April 30, 2018, I informed the SEC that we would agree a date for the deposition and answer any questions the SEC required prior to the deposition to streamline the meeting, and again requested that the SEC agree to a reasonable four-hour limit for the deposition. The SEC refused to do so and informed me that they would seek judicial intervention.

13. On May 4, 2018, I spoke with the SEC and again urged that they consider placing reasonable time limits on the testimony they would take from Mr. Carter so as to minimize the burden. The SEC refused to agree to any time limit and again requested that Mr. Carter sign a tolling agreement.

14. On May 5, 2018, I spoke with the SEC and informed them that I would agree to not oppose their Order Requiring Obedience to a Subpoena and would agree to a date and location on which Mr. Carter would appear for testimony. I requested that the stipulation for the testimony indicate it be limited to that date – which would allow the SEC a full eight hours to obtain testimony.

      15.    The SEC confirmed that the testimony "would almost certainly finish in one day" but adamantly refused to impose a time limit. I then proposed the stipulation be one day, allowing the SEC to subpoena Mr. Carter on a second day if they considered it necessary. The SEC again rejected any form of time limit to the testimony and, despite their prior representations that the testimony would not last more than a day, would not agree to a court order that specified a specific date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2018, in New York, New York

                                                                         Alex Spiro
                                          Quinn Emanuel Urquhart & Sullivan